IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| ALLSTATE LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>   vs.<br>GREGORY MCKEAN, and TAMERA OCHS ROTHSCHILD, as Executor of Margaret McKean's Estate,<br><br>        Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     2:21-CV-01111-MJH |

OPINION

Interpleader Plaintiff, Allstate Life Insurance Company, initiated the within action for a determination, regarding entitlement to proceeds under a life insurance policy (the "Policy") issued on the life of the decedent, Margaret McKean. (ECF No. 19 at ¶ 1). In its Amended Complaint, Allstate named, as interested parties to the proceeds, Kirke McKean, as Guardian of Margaret McKean's Estate; Gregory McKean, individually as beneficiary; and Gregory McKean, as then-Executor of the Decedent's Estate. *Id*. On January 14, 2022, the Orphans' Court of Mercer County appointed Tamera Ochs Rothschild as Executrix of Margaret McKean's Estate. On June 1, 2022, by stipulation and order, the caption was amended to substitute executrix, Ms. Rothschild for Gregory McKean as Executor of the Estate. The only presently interested parties in the proceeds are either Ms. Rothschild, as Executrix of the Estate, or Gregory McKean, individually, as the named Policy beneficiary. (ECF No. 52). Said order also directed Allstate to deposit $232,616.99 into Court. (ECF No. 52). On June 29, 2022, Allstate deposited said sums into Court, thereby discharging its duties under the Policy and terminating its participation in this case. (ECF Nos. 52 and 60). Ms. Rothschild and Mr. Gregory McKean now respectively move

for summary judgment, each seeking exclusive entitlement to the deposited funds. (ECF Nos. 80 and 82). These motions are now ripe for consideration.

Upon consideration of Ms. Rothschild's and Gregory McKean's respective motions for summary judgment (ECF Nos. 80 and 82), the Parties' Stipulation of Proposed Facts (ECF Nos. 77 and 79) and Concise Statement of Material Facts (ECF No. 84), Responses and Briefs (ECF Nos. 81, 83, 85, 86, 87,88, 89, 92, and 93), the relevant pleadings, and for the following reasons, Ms. Rothschild's Motion for Summary Judgment will be denied, and Gregory McKean's Motion for Summary Judgment will be granted.

I. Background

On October 26, 2009, Allstate issued a life insurance policy insuring the life of Margaret A. McKean. (ECF No. 77 at ¶ 1). Gregory McKean was the named beneficiary to said Policy, and as such, he was entitled to be paid the death benefit upon the death of Margaret A. McKean, subject to the Policy's terms and conditions. *Id*. at ¶ 2. The Policy also provides that, upon request to terminate/surrender the Policy from the person having the rights of ownership as defined in the Policy, Allstate would pay that person the cash surrender value. *Id*. at ¶ 3. By order dated June 18, 2020, the Mercer County Court of Common Pleas, Orphans' Court Division, declared Margaret McKean incapacitated and appointed Kirke McKean as Guardian of her Estate ("Guardian"). *Id*. at ¶ 4. A subsequent, August 4, 2020 Order, amended the June 18, 2020 Order, stating in relevant part as follows:

> All financial institutions, including without limitation banks, savings and loans, credit unions, and brokerages, shall grant the authority to the Guardian of Margaret A. McKean's estate access to any and all assets, records, and accounts maintained for the benefit of Margaret A. McKean; and the Guardian of Margaret A. McKean's estate shall be entitled to transfer, retitle, withdraw, or otherwise exercise dominion and control over any and all said assets, records, and accounts. The failure of any financial institution to honor this order may lead to contempt proceedings and the imposition of sanctions.

(ECF No. 79 at p. 2).

On November 18, 2020, Kirke McKean faxed a copy of the June 18, 2020 Order to Allstate. (ECF No. 77 at ¶ 5). Said facsimile did not include the August 4, 2020 Amended Order. On December 23, 2020, Kirke McKean, as guardian of Margaret McKean's estate, submitted a Request for Service form to Allstate, requesting termination/surrender of the Policy for the benefit of the guardianship estate. *Id*. at ¶ 6. Said submission included the August 4, 2020 Amended Order.

On December 29, 2020, Allstate preliminarily denied the termination/surrender request and stated that it could not complete said request unless Kirke McKean provided a court order, pursuant to 20 Pa.C.S. § 5536(b)(8). *Id*. at ¶ 8. On December 30, 2020, Allstate also advised that a further court order, specifically authorizing the termination/surrender of the contract, was needed. *Id*. at ¶ 9. On January 3, 2021, Margaret McKean passed away, thereby terminating the guardianship and giving rise to a decedent's estate. *Id*. at ¶ 10. On January 7, 2021, Kirke McKean's counsel sent a letter to Allstate, urging Allstate to honor the termination/surrender request and to forebear from paying the death benefit to any beneficiary. *Id*. at ¶ 11. On or about January 11, 2021, Gregory McKean, as beneficiary of the Policy, requested Allstate to pay him the death benefit. *Id*. at ¶ 12. On August 20, 2021, due to competing requests by Kirke McKean and Gregory McKean, Allstate filed the within interpleader action. *Id*. at ¶ 13.

In her motion for summary judgment, Ms. Rothschild contends that Kirke McKean's termination/surrender request, made prior to Ms. McKean's death, should have resulted in the following: 1) the termination of the Policy; 2) termination of Gregory McKean as beneficiary to any death benefit; and 3) payments of Policy surrender proceeds to the Estate.

3

In his motion for summary judgment, Gregory McKean argues 1) that Kirke McKean, as guardian, did not obtain a court order to authorize a termination/surrender request pursuant to 20 Pa.C.S. § 5536(b)(8); and 2) pursuant to law and the Policy provisions, Kirke McKean's attempt to surrender/terminate the policy before Margaret McKean's death was not proper, such that it did not effect a termination/surrending of the policy; and 3) that Gregory McKean, as the named Policy beneficiary, is entitled to the deposited funds as a matter of law.

The parties do not dispute the necessary salient facts for this Court to determine their respective motions for summary judgment. (ECF Nos. 77, 79, and 84).

II.     Relevant Standard

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted).  Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit.  *Id.*  In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party.  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted).  However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law.  *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

III.   Discussion

In support of her motion for summary judgment, Ms. Rothschild maintains that, under the plain language of the Policy and the June 18, 2020 and August 4, 2020 Orphans' Court Orders, Allstate should have processed the termination/surrender request and deemed the Policy terminated/surrendered.  Ms. Rothschild contends that the June 18, 2020 Order appointing Kirke McKean as guardian of Ms. McKean's estate granted him the power and authority to terminate/surrender the Policy.  Further, Ms. Rothschild argues that the August 4, 2020 Order, directing all "financial institutions" to grant the guardian access, discretion, and control over Ms. McKean's assets included insurance companies, such that Kirke McKean had authority to request termination/surrender of the Allstate Policy.  In such case, Allstate was required to terminate the Policy and pay the surrender value to him as guardian of the estate. On the other hand, in support of his motion for summary judgment, Gregory McKean maintains that these Guardianship Orders do not apply to insurance companies or insurance contracts because, 1) insurance companies are not financial institutions; and 2) the June 18, 2020 and August 4, 2020 Guardianship Orders do not expressly empower guardian, Kirke McKean, to engage in insurance transactions, i.e., to terminate/surrender the Policy at issue herein.  Gregory McKean argues that such authority derives from the Orphans' Court pursuant to the Pennsylvania Probate, Estates, and Fiduciary (PEF) Code Section 5536(b)(8).

As regards termination/surender under the terms of the Policy, the principles of interpretation for a contract of insurance under Pennsylvania law are well settled, and the task of interpreting an insurance contract is generally performed by courts, who read the insurance policy as a whole and construe it according to the plain meaning of its terms where the terms are clear and unambiguous. *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982); *Nationwide Ins.*

5

*Co. v. Horace Mann Ins. Co.*, 759 A.2d 9, 11 (Pa. Super. 2000) (finding the intent of parties to be discerned from the plain language of the contract); s*ee also Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 517 A.2d 910, 917 (Pa. 1986) ("The language of an insurance policy should not be tortured to create ambiguities but should be read to avoid ambiguities if possible.").

>The Allstate Policy provides in relevant part as follows:
>
>You, Your - The person(s) having the rights of ownership defined in the contract.
>
>\*\*\*
>
>The insured is the owner if no other person is named in the application as owner. The owner controls the contract during the lifetime of the insured. Unless you provide otherwise, as owner, you may exercise all rights granted by the contract without the consent of anyone else. If the last named owner dies before the insured, then any contingent owner is the new owner. If no owner named in this contract is living, then the owner will be the estate of the last named owner.
>
>\*\*\*
>
>You may name a new owner by written request in a form satisfactory to us.
>
>\*\*\*
>
>Termination
>
>This contract will terminate upon the earliest of the following events:
>
>1. Surrender of the contract; or
>2. End of the grace period; or
>3. Death of the insured.

(ECF No. 77-1 at pp. 10-11, 15). The Policy also provides in relevant part as follows:

>If the insured dies while this contract is in force, we will pay the death benefit when we have received due proof of death, subject to the terms and conditions of this contract and any applicable state requirements.
>
>\*\*\*

6

> Subject to the terms and conditions of this contract, the beneficiary will receive the death benefit when the insured dies and we have received due proof of death. The beneficiary is as stated in the application unless changed.
>
> \*\*\*

*Id*. at pp. 10-11.

Under the Policy language, there is no ambiguity. Neither Ms. Rothschild nor Gregory McKean maintains that during Margaret McKean's lifetime, she named any new owner under the Policy. Thus, Margaret McKean was the Policy owner in control of the insurance contract. By its June 18, 2020 Order, the Mercer County Court of Common Pleas, Orphans' Division, determined that Margaret McKean was incapacitated and appointed Kirke McKean as guardian of her Estate. Said order was entered in accordance with the PEF Code, which specifically provides for Incapacitated Persons' estate property and ownership, guardianship powers, and those powers reserved to the Orphans' Court.

In recognizing the uniqueness of incapacitated persons and their property, the PEF Code identifies the purpose of said statutory provisions as follows:

> Recognizing that every individual has unique needs and differing abilities, it is the purpose of this chapter to promote the general welfare of all citizens by establishing a system which permits incapacitated persons to participate as fully as possible in all decisions which affect them, which assists these persons in meeting the essential requirements for their physical health and safety, protecting their rights, managing their financial resources and developing or regaining their abilities to the maximum extent possible and which accomplishes these objectives through the use of the least restrictive alternative; and recognizing further that when guardianship services are necessary, it is important to facilitate the finding of suitable individuals or entities willing to serve as guardians.

20 Pa.C.S. § 5502.

Pennsylvania courts consider life insurance contracts to be personal property. *In re Estate of Sauers*, 613 Pa. 186, 199, 32 A.3d 1241, 1249 (2011). In general, as regards ownership, "[l]egal title to all real estate and personal property of an incapacitated person shall

remain in him, subject, however, to all the powers granted to his guardian by this title and lawfully by a governing instrument and to all orders of the court." 20 Pa.C.S. § 302.

For incapacitated persons, the PEF Code provides for many guardian powers by incorporating other sections from the PEF Code. *See* 20 Pa.C.S. § 5521(b). However, Section 5521(b) does not incorporate or specifically address provisions and authority related to life insurance contracts and policies. Instead, Section 5536(b)(8) of the PEF Code provides specific direction and authority relative to life insurance contracts as follows:

> **(b) Estate plan.--The court**, upon petition and **with notice to all parties in interest** and for good cause shown, shall have the power to substitute its judgment for that of the incapacitated person with respect to the estate and affairs of the incapacitated person for the benefit of the incapacitated person, his family, members of his household, his friends and charities in which he was interested. This power shall include, but is not limited to, the power to:
>
> \*\*\*
>
> > (8) Exercise all rights and privileges under life insurance policies, annuity contracts or other plans or contractual arrangements providing for payments to the incapacitated person or to others after his death.
>
> \*\*\*
>
> In the exercise of its judgment for that of the incapacitated person, **the court**, first being satisfied that assets exist which are not required for the maintenance, support and well-being of the incapacitated person, may adopt a plan of gifts which results in minimizing current or prospective taxes, or which carries out a lifetime giving pattern. **The court** in exercising its judgment shall consider the testamentary and inter vivos intentions of the incapacitated person insofar as they can be ascertained.

20 Pa.C.S. § 5536(b)(8) (emphasis added).

PEF Code Section 5536(b)(8) provides that the Orphans' Court has the power to exercise rights and privileges under life insurance policies. Thus, when guardian Kirke McKean requested Allstate to terminate/surrender Ms. McKean's Policy instead of the Orphans' Court ordering such termination/surrender, Allstate correctly responded that the August 4, 2020 Order

8

was insufficient, because 20 Pa.C.S. § 5536(b)(8) requires that a court order specifically identify the Policy and authorize the surrender. (ECF No. 77-7). The record reflects that the Mercer County Orphans' Court was never requested to engage in any Section 5536(b)(8) proceedings to exercise its powers over the termination/surrender of the Allstate Policy. Thus, the Orphans' Court never entered any order to authorize the termination/surrender of the same.

Mrs. Rothschild next contends that the Allstate Policy was terminated/surrendered pursuant to the language of the August 4, 2020 Court Order. The language of the August 4, 2020 Order derives verbatim from Pennsylvania Orphans' Court Rule 14.7(b). Said rule provides, in relevant part as follows:

> (b) Order Adjudicating Incapacity and Appointing Guardian of Estate.
>
> (1) […], an order adjudicating incapacity and appointing a guardian of the estate shall address:
>
> > (i)   whether a bond is required and when the bond is to be filed; and
> > (ii)  whether the guardian can spend principal without prior court approval.
>
> (2) […] an order adjudicating incapacity and appointing a guardian of the estate shall contain a provision substantially in the following form:
>
> All financial institutions, including without limitation, banks, savings and loans, credit unions, and brokerages, shall grant to the guardian of [incapacitated person]'s estate access to any and all assets, records, and accounts maintained for the benefit of [incapacitated person], and the guardian of [incapacitated person]'s estate shall be entitled to transfer, retitle, withdraw, or otherwise exercise dominion and control over any and all said assets, records, and accounts. The failure of any financial institution to honor this order may lead to contempt proceedings and the imposition of sanctions.

Pennsylvania Orphans' Court Rule 14.7(b).

While said rule provides no definition for a "financial institution," the PEF Code provides other exemplar definitions for "financial institution" as follows:

> Definition.--As used in subsection (b) of this section "financial institution" means a bank, a bank and trust company, a trust company, a savings and loan association, a building and loan association, a credit union, a savings bank, a private bank and a national bank. 20 Pa.C.S. § 4102(c).
>
> 'Financial institution.' A bank, trust company, savings institution or credit union chartered and supervised under Federal or state law. 20 Pa.C.S. § 5301. 3.
>
> Definition.--As used in this section, 'financial institution' includes a bank, a bank and trust company, a trust company, a savings and loan association, a building and loan association, a savings bank, a private bank and a national bank. 20 Pa.C.S. § 5537.

None of these definitions supports Ms. Rothschild's position that the insurance company, Allstate, is a "financial institution" under either the Orphans' Court's Rules or Pennsylvania PEF Code. Further, PEF Code Section 5536(b)(8) speaks directly and specifically to a guardians' power to affect life insurance policies. And as discussed above, neither Rule 14.7 nor the August 4, 2020 Court Order expressly define or specify that "financial institution" includes a life insurance company.

Ms. Rothschild's argument that Rule 14.7's reference to "financial institution" includes insurance companies, does not comport with the provisions or intent of PEF Code Section 5536(b)(8). The PEF Code Section 5536(b)(8) specifically addresses life insurance assets of an incapacitated person and provides for specific procedural safeguards, which require the filing of a petition, notice to interested parties and specific court findings, before the Orphans' Court is authorized to direct actions upon insurance contracts. To include life insurance companies as "financial institutions" under Rule 14.7, would empower guardians to terminate/surrender life insurance contracts without the safeguards provided for under Section 5536(b)(8). Such would conflict with the PEF Code Section 5536(b)(8). In such circumstance, the statutory provisions of Section 5536(b)(8) control over Rule 14.7. *See Terra Firma Builders, LLC v. King*, 249 A.3d 976, 984 (Pa. 2021) (holding statute prevails over general provisions of rules of procedure).

Therefore, Ms. Rothschild's position, that Rule 14.7, and the language therefrom as contained within the August 4, 2020 Order, sufficiently authorized Kirke McKean to terminate/surrender the Policy, lacks merit.

Here, under the plain language of the Policy and the PEF Code relating to incapacitated persons, Ms. McKean remained the owner of the Policy because no new owner had been named. According to the PEF Code, no ownership changed upon the incapacity of Ms. McKean. While Kirke McKean submitted the June 18, 2020 and August 4, 2020 Orphans' Court Orders to Allstate in support of his termination/surrender request, such were without authority and ineffective. Allstate correctly determined and advised Kirke McKean that these orders were not sufficient to permit him to terminate/surrender the Policy. Instead, Allstate correctly directed that a court order, pursuant to 20 Pa.C.S. § 5536(b)(8), was required to establish authority to terminate/surrender the Policy.

On January 3, 2021, upon Ms. McKean's death, the guardianship and Kirke McKean's guardian powers terminated. *See In re Graham's Estate*, 147 Pa.Super. 57, 60, 23 A.2d 235, 237 (1941), decree aff'd, 346 Pa. 479, 31 A.2d 125 (1943) (The powers of a guardian end with the life of the incapacitated person). Therefore, under the plain language of the contract and the statutory language regarding personal property ownership, Kirke McKean did not meet the specific contractual or statutory requirements, to terminate/surrender the Policy. Thus, upon Ms. McKean's death, the Policy was in full effect, whereupon payment was due to the named beneficiary, Gregory McKean.

Having determined that Kirke McKean had no authority to effect a termination/surrender request under the Policy, the PEF Code, or Orphans' Court orders, the remaining issue is whether

Gregory McKean is entitled to the death benefit under the Policy in force at the time of Margaret McKean's death.

There is no question that Gregory McKean was the named Policy beneficiary at the time of Ms. McKean's death. (ECF No. 77-1 at p. 31). As discussed above, there was no effective termination/surrender of said policy before Ms. McKean died. Thus, Gregory McKean, as beneficiary, is entitled to the death benefit under the Policy. As such, the Policy death benefit proceeds, on deposit with the Clerk of Court by Allstate, are due and payable to Gregory McKean.

IV. Conclusion

Based upon the foregoing, Ms. Rothschild's Motion for Summary Judgment will be denied, and Gregory McKean's Motion for Summary Judgment will be granted. Judgment will be entered in favor of Gregory McKean and against Ms. Rothschild. A separate order will issue with instructions that the Clerk will disburse the deposited funds, plus any accrued interest, to Gregory McKean and/or his counsel.

Dated: March 20, 2023

Marilyn J. Horan
United States District Judge